**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SEAN F. MESCALL,

    Petitioner,                               Case No. 2:20-11110
                                                    HONORABLE VICTORIA A. ROBERTS

v.

JONATHAN HEMINGWAY,

    Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS BROUGHT PURSUANT TO 28 U.S.C. § 2241 (ECF No. 1), GRANTING THE MOTION TO AMEND THE PETITION (ECF No. 12), DENYING THE MOTIONS FOR DISCOVERY AND AN EVIDENTIARY HEARING (ECF Nos. 13, 14), AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Sean F. Mescall, ("Petitioner"), confined at the Federal Correctional Institution in Milan, Michigan (FCI-Milan) seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2241. In his *pro se* application, Petitioner claims that he is at risk of contracting the Covid-19 virus while incarcerated at FCI-Milan. Petitioner alleges that the Bureau of Prisons (BOP) is deliberately indifferent to his medical needs. Petitioner seeks to be released to home confinement or placed on furlough until the Covid-19 pandemic subsides. Petitioner also seeks an order for every inmate at FCI-Milan to be tested for Covid-19. For the reasons that follow, the petition for a writ of habeas corpus is DENIED WITH PREJUDICE.

**I. Background**

Petitioner is serving a fourteen year sentence for securities fraud, 15 U.S.C. §§ 78j(b), 78ff (2012), 17 C.F.R. § 240.10b–5 (2014); wire fraud, 18 U.S.C. § 1343 (2012);

1

and money laundering, 18 U.S.C. § 1956(a)(1)(B)(i). *See United States v. Mescall*, 624 F. App'x 103 (4th Cir. 2015).

Petitioner's projected release date is more than four years away. (Ex. 2 ¶ 4; Ex. 3, Burnett Decl. ¶ 3)(ECF No. 9-3, PageID.78; ECF No. 9-4, PageID.95). Petitioner was disciplined three times, most recently in December 2019 for possessing stolen property. (Ex. 2 ¶ 5 & Attachment D)(ECF No. 9-3, PageID.78, 91-93). Petitioner suffers from anxiety, depression, and hypertension (high blood pressure) and is taking medications to treat those conditions; Petitioner's symptoms are under control. (Sealed Ex. 5, Conditions & Medications). Petitioner tested negative for Covid-19 on May 17, 2020, when he was hospitalized for a hip injury he suffered while under the influence of synthetic marijuana. (Sealed Ex. 6, Clinical Encounter; Sealed Ex. 7, Covid-19 Test Result).

Petitioner does not have any Covid-19 risk factors. (Ex. 1 ¶ 30)(ECF No. 9-2, PageID.74). Petitioner's hypertension is not a "serious heart condition" according to the Centers for Disease Control. *See* CDC: Groups at Higher Risk for Severe Illness (defining "serious heart condition" to include pulmonary hypertension as opposed to high blood pressure). *See Groups at Higher Risk for Severe Illness*, Centers for Disease Control and Prevention. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Petitioner is housed in a dorm-style unit with 131 inmates. (Ex. 1 ¶ 30)(ECF No. 9-2, PageID.74). Medical staff make daily rounds, and any inmate with signs or symptoms of Covid-19 is removed. (*Id.*)

On March 25, Petitioner filed a habeas petition. Petitioner alleges that the failure to test all staff and inmates at FCI Milan for Covid-19 puts him at risk of contracting the virus,

2

which is causing him mental anguish, fear, and anxiety. Petitioner claims that there is no toilet paper or other basic items and supplies. Petitioner seeks a furlough, a transfer to home confinement, or an order that all staff and inmates at FCI Milan be tested for Covid-19. (ECF 1, PageID.8).

While the petition was pending, Petitioner filed an administrative remedy form seeking a transfer to home confinement under the CARES Act. (ECF 7; PgID.30-31). The warden denied Mescall's request, citing his PATTERN score and disqualifying record of misconduct while incarcerated. (Ex. 2 ¶ 5)(ECF No. 9-3, PageID.78). As of June 5, Petitioner had not appealed the warden's decision. (Ex. 4, Suydam Decl. ¶ 5)(ECF No. 9-5, PageID.99-100). The Bureau of Prisons declined to pursue a request for compassionate release on Petitioner's behalf because he is ineligible. (Ex. 3 ¶ 4)(ECF No. 9-4. PageID.95). Petitioner did not ask for a furlough from the BOP. (Ex. 2 ¶ 7)(ECF No. 9-3, PageID.78).

## II. Discussion

This nation and the entire planet is currently in the grip of the Coronavirus or Covid-19 pandemic. As of August 6, 2020, there have been 4,802,491 cases of Covid-19 in the United States and 157,631 deaths. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html.

In the State of Michigan, as of August 6, 2020, there were 94,656 cases of Covid-19 and 6,506 deaths. https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---,00.html. Dr. Anthony Fauci, the nation's leading infectious disease expert, warned that the Covid-19 pandemic could reach the level of the historic 1918 influenza epidemic which

killed millions of people. https://www.newsweek.com/fauci-covid-19-level-1918-spanish-flu-mother-all-pandemics-1517867.

This Court is well aware of, and deeply concerned about, the Covid-19 pandemic, particularly the risks it causes to persons in institutionalized settings like prisons and jails. This Court, in fact, granted an emergency motion for bond and ordered the release of a state habeas petitioner from the Lakeland Correctional Facility in Coldwater, Michigan, in part based on concerns that the proliferation of Covid-19 at this facility posed a risk to the health of the petitioner, and in part because that petitioner had shown that he was likely to succeed on the merits of his habeas claim, based on a strong showing of actual innocence. *Clark v. Hoffner*, No. 16-11959, 2020 WL 1703870 (E.D. Mich. Apr. 8, 2020).

The Bureau of Prisons began plans to address the Covid-19 pandemic in January 2020, and developed a multiphase action plan. *See* BOP Pandemic Protocol; (Ex. 1, Clore Decl. ¶¶ 3-5)(ECF 9-2, PageID.66-67). The warden of FCI Milan implemented the plan. (Ex. 1 ¶ 19)(*Id.,* PageID.71-72). The warden suspended inmate transfers, visits, staff travel, staff training, contractor access, and tours. (Ex. 1. ¶ 6)(*Id.,* PageID.67). Enhanced screening procedures were also put into place. New inmates with exposure risk factors were quarantined. Modified operations were put into place to maximize social distancing. (Ex. 1 ¶¶ 7-9)(*Id.,* PageID.67-68); BOP Covid-19 Modified Operations. The warden subsequently ordered all newly arriving inmates to be quarantined for 14 days regardless of symptoms; all symptomatic inmates were isolated until they tested negative for the disease or were cleared by medical staff. All remaining inmates were to be largely secured in their living quarters to mitigate transmission of the virus. (Ex. 1 ¶¶ 10-14)(*Id.,*

PageID.68-70). Testing capability was expanded in mid-April and again in May. The warden implemented appropriate protocols for the increased testing. (Ex. 1 ¶ 15)(*Id.,* PageID.70). Inmates were ordered confined to their cells for the majority of the day, including for meals. All inmates were provided disinfectant and face masks. All staff are ordered to wear face masks during any interaction with inmates when social distancing is not possible. Inmates receive regular updates about the status of the pandemic, the Bureau's response, and best practices to minimize the risk of transmission. The inmates are advised to report symptoms, with many opportunities to do so. (Ex. 1 ¶¶ 19-23)(*Id.,* PageID.71-72). Symptomatic inmates are evaluated and then isolated and tested as appropriate. (Ex. 1 ¶ 26)(*Id.,* PageID.73). Inmates identified as at-risk for Covid-19 are housed together to lessen exposure. (Ex. 1 ¶ 27)(*Id.,* PageID.73-74).

As of June 9, 2020, FCI-Milan had eight open cases of Covid-19; those inmates were housed in a separate prison unit. Seventy-one inmates who tested positive recovered from the virus. Three inmates at FCI-Milan died from Covid-19, but there had been no deaths since mid-April. (Ex. 1 ¶ 29)(ECF No. 9-2, PageID.74); *see* BOP Press Release: Inmate Death at FCI Milan (reporting third death on April 11). Fifty-four prison employees at Milan recovered from the virus; one staff member who tested positive remained off duty. (*Id.,* PageID.74).

The Bureau of Prisons prioritizes home confinement, both nationwide and at FCI Milan. (Ex. 2, Dew Decl. ¶ 3)(ECF No. 9-3, PageID.77); *see* Coronavirus Aid, Relief, and Economic Security Act (CARES Act) § 12003(b)(2), Pub. L. No. 116-136, 134 Stat. 281, 516 (Mar. 27, 2020). The Bureau considers the age and vulnerability of the inmate to

5

Covid-19, the inmate's conduct in prison, and the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN score"), among other discretionary factors. *See* 03-26-2020 Directive to BOP. Before home confinement is granted, the Bureau's Medical Director, or someone he designates, must assess the inmate's risk factors for severe Covid-19 illness, the risks of Covid-19 at the inmate's prison facility, and the risk of Covid-19 at the proposed location for home confinement. *See id*. As of August 7, 2020, at least 7,378 federal inmates were granted home confinement since the Covid-19 pandemic began, and that number continues to grow. *See* BOP Coronavirus FAQs. https://www.bop.gov/coronavirus/faq.jsp.

### III. Legal Analysis

#### A. The motion to amend the petition is GRANTED.

The Court grants the motion to amend the habeas petition; the amended habeas petition supplements the claims raised in the original petition. *See e.g. Braden v. United States*, 817 F.3d 926, 930 (6th Cir. 2016).

#### B. Petitioner's claims are non-cognizable on habeas review.

Where a federal prisoner's habeas petition seeks release from prison by claiming that no set of conditions of confinement would be constitutionally sufficient, the claim is properly construed as challenging the fact or extent of confinement, which is a cognizable habeas claim under 28 U.S.C. § 2241. *See Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020)(citing *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011). On the other hand, conditions of confinement claims which seek relief in the form of improvement of prison

conditions or a transfer to another facility are not cognizable under § 2241. *Id.* (citing *Luedtke v. Berkebile,* 704 F.3d 465, 466 (6th Cir. 2013)).

Petitioner's claims are non-cognizable in habeas; Petitioner does not allege that no set of conditions of confinement would remedy the risk caused by Covid-19. Petitioner alleges that insufficient testing of the inmates and staff is being conducted; Petitioner alleges that some prison staff members are not following protocols for wearing face masks; Petitioner alleges that there is insufficient social distancing; Petitioner claims that there is insufficient sanitary equipment being provided to the inmates. Petitioner argues that the risk of Covid-19 transmission at FCI-Milan could be alleviated if facility wide testing for Covid-19 was ordered, if everyone was ordered to wear a face mask and to socially distance, and if adequate sanitary equipment was provided to all inmates. Petitioner does not allege that "there are no conditions of confinement sufficient to prevent irreparable constitutional injury" at FCI-Milan. Only "where a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement." *Wilson v. Williams*, 961 F.3d at 838 (citing *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011)). Petitioner's claims are non-cognizable in a habeas petition, because he challenges the conditions of confinement, rather than the fact or extent of his confinement.

Moreover, Petitioner failed to show that the warden at FCI-Milan was deliberately indifferent to Petitioner's medical needs or that of other inmates.

The Eighth Amendment to the U.S. Constitution requires prison officials to provide adequate medical care to prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Brooks*

7

*v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994). The Eighth Amendment prohibition against unnecessary and wanton infliction of pain is violated when there is deliberate indifference to the serious medical needs of an inmate. *Hicks v. Grey*, 992 F.2d 1450, 1454-1455 (6th Cir. 1993). The test to ascertain whether prison or jail officials were deliberately indifferent to an inmate's serious medical needs, in violation of the Eighth Amendment prohibition against cruel and unusual punishment, has both an objective and subjective component. *Napier v. Madison County, Ky.,* 238 F.3d 739, 742 (6th Cir. 2001)(citing to *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir. 2000)). Under the objective component, the inmate must establish that the alleged deprivation is sufficiently serious and poses a substantial risk of serious harm. The subjective component is established if the inmate shows that prison officials had a "sufficiently culpable state of mind." *Napier v. Madison County, Ky.,* 238 F.3d at 742 (citing to *Farmer v. Brennan,* 511 U.S. at 834). To prove deliberate indifference, a plaintiff must show that the defendant "knew of, yet disregarded, an excessive risk to his health." *Logan v. Clarke*, 119 F.3d 647, 649 (8th Cir. 1997).

The Sixth Circuit in *Wilson v. Williams, supra,* confronted an Eighth Amendment challenge brought by several inmates at the Federal Correctional Institution in Elkton, Ohio alleging that prison staff at FCI-Elkton were deliberately indifferent to the medical risks caused by the Covid-19 virus. The inmates sought a preliminary injunction as part of their habeas petition. The Sixth Circuit ruled that the prisoners were not likely to succeed on the merits of their Eighth Amendment claim. The Sixth Circuit agreed with the inmates that there was a potential risk of serious harm to inmates at FCI-Elkton through exposure to the COVID-19 virus. As of April 22, 2020, fifty-nine inmates and forty-six staff

8

members tested positive for COVID-19, and six inmates died. *Wilson v. Williams*, 961 F.3d at 840. The Sixth Circuit concluded, however, that the petitioners did not show that prison officials at FCI-Elkton were deliberately indifferent to the prisoners' medical needs. *Id.* The Sixth Circuit noted that prison officials at FCI-Elkton were:

> implement[ing] measures to screen inmates for the virus; isolat[ing] and quarantin[ing] inmates who may have contracted the virus; limit[ing] inmates' movement from their residential areas and otherwise limit[ing] group gatherings; conduct[ing] testing in accordance with CDC guidance; limit[ing] staff and visitors and subject[ing] them to enhanced screening; clean[ing] common areas and giv[ing] inmates disinfectant to clean their cells; provid[ing] inmates continuous access to sinks, water, and soap; educat[ing] staff and inmates about ways to avoid contracting and transmitting the virus; and provid[ing] masks to inmates and various other personal protective equipment to staff.
>
> *Id.*, at 841.

The Sixth Circuit concluded that through these actions, the BOP "had responded reasonably to the risk posed by COVID-19 and that the conditions at Elkton cannot be found to violate the Eighth Amendment." *Wilson v. Williams*, 961 F.3d at 841:

> Here, while the harm imposed by COVID-19 on inmates at Elkton "ultimately [is] not averted," the BOP has "responded reasonably to the risk" and therefore has not been deliberately indifferent to the inmates' Eighth Amendment rights. *Farmer*, 511 U.S. at 844, 114 S. Ct. 1970. The BOP implemented a six-phase action plan to reduce the risk of COVID-19 spread at Elkton. Before the district court granted the preliminary injunction at issue, the BOP took preventative measures, including screening for symptoms, educating staff and inmates about COVID-19, cancelling visitation, quarantining new inmates, implementing regular cleaning, providing disinfectant supplies, and providing masks. The BOP initially struggled to scale up its testing capacity just before the district court issued the preliminary injuction (sic), but even there the BOP represented that it was on the cusp of expanding testing. The BOP's efforts to expand testing demonstrate the opposite of a disregard of a serious health risk.
>
> *Id.,* at 841.

9

The steps undertaken by the warden and other prison officials to contain the Covid-19 virus at FCI-Milan are identical to the steps taken by the prison officials at FCI-Elkton which were deemed to pass constitutional muster by the Sixth Circuit. The fact that prison officials were unable to completely eradicate the spread of Covid-19 at FCI-Milan does not demonstrate deliberate indifference to the medical needs of the inmates. *Wilson v. Williams*, 961 F.3d at 842-43. The BOP's failure to make "full use of the tools available to remove inmates from [Milan], such as temporary release, furlough, or home confinement[,]" likewise does not establish deliberate indifference; Sixth Circuit "precedents do not require that prison officials take every possible step to address a serious risk of harm." *Id.,* 844.

Although the Court is sympathetic to Petitioner's anxiety and mental anguish that he allegedly suffers from his fear of contracting Covid-19, these fears are shared by persons around the nation and the world in various settings and by itself is not grounds for habeas relief. *Cf. United States v. Bothra*, 2020 WL 2611545, at *2 (6th Cir. May 21, 2020) ("Courts have also been reluctant to find that generalized fears of contracting COVID-19, without more, constitute a compelling reason[,]" to overturn pretrial detention order). Petitioner is not entitled to relief on his Eighth Amendment claim.

Petitioner also seeks a transfer to home confinement or to be placed on furlough. Petitioner is not entitled to relief on this claim for two reasons.

A federal habeas corpus petitioner is required to exhaust his administrative remedies before seeking habeas corpus relief under 28 U.S.C. § 2241. *See Luedtke v. Berkebile,* 704 F.3d at 466; *Fazzini v. Northeast Ohio Correctional Center,* 473 F.3d 229, 231 (6th Cir.

2006); *Little v. Hopkins*, 638 F.2d 953, 954 (6th Cir. 1981). The failure to exhaust administrative remedies is an affirmative defense that the respondent is required to prove. *See e.g. Luedtke,* 704 F.3d at 466. Petitioner did not exhaust his administrative remedies with respect to these claims.

The Bureau of Prisons maintains an extensive administrative remedy procedure "through which an inmate may seek formal review of a complaint which relates to any aspect of his imprisonment if less formal procedures have not resolved the matter." 28 C.F.R. § 542.10. Pursuant to this administrative procedure, a prisoner who seeks administrative review of a complaint concerning the BOP must apply to the warden or community corrections manager, to the Regional Director, and to the Office of General Counsel for relief. *See Mazzanti v. Bogan,* 866 F. Supp. 1029, 1032 (E.D. Mich. 1994)(citing 28 C.F.R. §§ 542.11, 542.13, and 542.15).

Petitioner failed to rebut the respondent's argument that he did not exhaust his administrative remedies regarding home confinement or furlough prior to filing his habeas petition. Petitioner admits that he failed to exhaust his administrative remedies but argues that it would be futile to do so because he could not obtain the administrative remedy form from prison officials. Although there is a futility exception to the exhaustion requirement, *See Fazzini,* 473 F.3d at 236 (citing *Aron v. LaManna,* 4 F. App'x 232, 233 (6th Cir. 2001)), Petitioner failed to show that it would be futile to exhaust his claim. Petitioner's futility allegation is conclusory or unsupported, which is insufficient to establish that it would be futile to exhaust his remedies. *See e.g. Dunbar v. Sabol*, 649 F. Supp. 2d 1, 4 (D. Mass. 2009). Petitioner did obtain the administrative remedy form to request home confinement.

11

The warden denied the request for home confinement and instructed Petitioner to appeal if he disagreed with the decision. (Ex. 4 ¶ 5 and Attachment B)(ECF No. 9-5, PageID.99-100, 107-09).

Secondly, assuming exhaustion would be futile, this Court cannot grant habeas relief to Petitioner on these claims.

Under 18 U.S.C. § 3621(b), the Bureau of Prisons, not the judiciary, "is responsible for designating the place of a prisoner's imprisonment." *United States v. Townsend*, 631 F. App'x 373, 378 (6th Cir. 2015). Petitioner "enjoys no statutory or constitutionally protected right, or entitlement, to transfer to…home confinement." *Heard v. Quintana*, 184 F. Supp. 3d 515, 521 (E.D. Ky. 2016). Petitioner is not entitled to habeas relief on this claim. *Id.*

Whether to grant a furlough under 18 U.S.C. § 3622 is within the sole discretion of the Bureau of Prisons; Courts lack the authority to overrule its decision or order furlough. *McMullen v. Hambrick*, 1 F.3d 1341, 1993 WL 302197, at *1 (6th Cir. Aug. 6, 1993)(Table); *see also United States v. Roberts*, No. 18-CR-528-5 (JMF), 2020 WL 1700032, at *3, ---- F. Supp. 3d---- (S.D.N.Y. Apr. 8, 2020). Petitioner is not entitled to relief on this claim.

Petitioner's request for an order directing the FCI-Milan to test all of the inmates for COVID-19 is denied. Claims by a prisoner alleging a lack of testing for COVID-19 challenge the conditions of confinement and should be brought as a civil rights action and not as a petition for a writ of habeas corpus. *See Fahr v. Arizona,* No. CV 20-08114 PCT-DGC (DMF), 2020 WL 3791535, at *3 (D. Ariz. July 7, 2020)*; Dillon v. Wolf*, No. 20-CV-

479-SMY, 2020 WL 3316006, at *1 (S.D. Ill. June 18, 2020). Plaintiff may file suit in federal court for damages arising from a violation of plaintiff's constitutional rights by persons acting under the color of federal law. *See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395 (1971).

This Court will not convert the habeas petition into a civil right action. Because of the vastly different procedural requirements for habeas petitions and other civil actions brought by prisoners, a court confronted with a habeas petition that is properly brought under 42 U.S.C. § 1983 or *Bivens* should dismiss the petition instead of "converting" the petition to a civil action brought pursuant to § 1983 or *Bivens*. *See e.g. Martin v. Overton*, 391 F.3d 710, 713 (6th Cir. 2004)(holding that the district court should have dismissed the habeas petitioner's § 2241 petition without prejudice to allow petitioner to raise his potential civil rights claims properly as a § 1983 action rather than to re-characterize it as a § 2254 petition without notice to petitioner). The allegations are dismissed without prejudice to Petitioner filing a new civil rights complaint or complaints.

**The motions for discovery and an evidentiary hearing are denied.**

Petitioner filed motions for discovery and for an evidentiary hearing.

Petitioner's allegations, even if true, do not entitle him to habeas relief; Petitioner is not entitled to seek discovery in support of his claims. *See Sellers v. U.S.*, 316 F. Supp. 2d 516, 523 (E.D. Mich. 2004). A habeas petitioner is not entitled to an evidentiary hearing on his claims if they lack merit. *See Stanford v. Parker,* 266 F.3d 442, 459-60 (6th Cir. 2001). The Court denies the motion for an evidentiary hearing.

## IV. Conclusion

The Petition for a Writ of Habeas Corpus brought pursuant to 28 U.S.C. § 2241 is **DENIED**.

A certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241. *Witham v. United States,* 355 F.3d 501, 504 (6th Cir. 2004); Petitioner need not apply for one before filing an appeal from the denial of his habeas petition. Petitioner is granted leave to appeal *in forma pauperis;* the appeal would be taken in good faith. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## V. ORDER

The Court **DENIES** the Petition for a Writ of Habeas Corpus (ECF No. 1).

The motion to amend the petition (ECF No. 12) is **GRANTED.**

The motion for discovery (ECF No. 13) and the motion for an evidentiary hearing (ECF No. 14) are **DENIED.**

Petitioner is **GRANTED** leave to appeal *in forma pauperis.*

**IT IS SO ORDERED.**

s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: 8/10/2020